GULF, C. & S. F. RY. CO. *et al.* v. STATE *et al.*

No. 439.    Opinion Filed April 6, 1909.

(101 Pac. 258.)

**RAILROADS,—Regulation—Passenger Trains.** Where the.. evidence shows that the passenger train service between Guthrie and Purcell, a distance of something like 70 miles, is adequate, and that said service between Purcell and Marietta, a distance of about 80 miles, on the same line is inadequate, and there was a finding to that effect by the corporation commission, an order presumed to be based upon such evidence and findings, requiring the railway company to run an additional passenger train a day each way between Guthrie and Marietta, was unreasonable.

Turner, J. dissenting.

(Syllabus by the Court.)

*Appeal from the State Corporation Commission.*

Proceedings by the State and others against the Gulf, Colorado & Santa Fe Railway Company and the Atchison, Topeka & Santa Fe Railway Company to require additional train service. From an order granting the petition, the railway companies bring error.    Reversed.

*Cottingham & Bledsoe,* for plaintiffs in error.

*Chas. West,* Atty. Gen., and *Geo. A. Henshaw,* Asst Atty. Gen., for defendants in error.

KANE, C. J.    This was a proceeding commenced by W.. F. Guinn and other complainants, before the corporation commission of the state, to require the plaintiffs in error, the Gulf, Colorado & Santa Fe Railway Company and the Atchison, Topeka & Santa Fe Railway Company, to put on additional train service between Guthrie and the state line on the south.    Separate complaints were filed by certain citizens of Ardmore, Berwyn, Davis, Wynnewood, Pauls Valley, Paoli, Wayne, and Edmond, cities along the line of railway between the above points, wherein they most humbly petitioned the corporation commission to restore trains Nos. 19 and 20 upon the old schedule, for the reason that south of Purcell there were only two trains in each direction in 24 hours, and only

one of these each way being daylight trains. Trains Nos. 19 and 20, being both daylight trains, would be a great convenience to the traveling public and the business men. Certain citizens of Sulphur also filed a petition with the commission, praying that the Atchison, Topeka & Santa Fe Railway Company restore train service between Guthrie and the Texas line, by running a train north, arriving at Guthrie at 12 o'clock noon, leaving Guthrie at 5 o'clock p. m., and also praying that the Sulphur branch connect with this train at Davis. These various complaints were received by the commission, filed, and notice served upon the defendants, to which each railway company filed its separate answer.

The defendants, while they answer separately, seem to be under one management and control, the evidence being to the effect that the Gulf, Colorado & Santa Fe Railway Company is owned and controlled by the Atchison, Topeka & Santa Fe Railway Company. The answer of the Atchison, Topeka & Santa Fe Railway Company was to the effect that its train service was adequate and sufficient; that it operated three first-class passenger trains a day each way between the city of Guthrie and the city of Purcell, as follows: Train No. 17, leaving Guthrie 10:35 a. m., stopping at Seward, Edmond, Oklahoma City, Norman, Noble, and arriving at Purcell at about 1:25 p. m.; train No. 115, leaving Guthrie at 7:10 p. m., stopping at the stations of Seward, Waterloo, Edmond, Britton, Oklahoma City, Flynn, Moore, Norman, Noble, Walker, and arriving at Purcell at about 9:30 p. m.; train No. 405, leaving Guthrie about 11:35 p. m., stopping at the stations of Seward, Edmond, Oklahoma City, Moore, Norman, and arriving at Purcell at about 2:15 a. m.; train No. 423, leaving Guthrie at 6:30 a. m., and arriving at Purcell at about 11:55 a. m., stopping at all stations; train No. 406, leaving Purcell about 3;15 a. m., arriving at Guthrie at 5:35 a. m., stopping at Norman, Oklahoma City, and Edmond; train No. 116, leaving Purcell about 6:30 a. m., stopping at Walker, Noble, Norman, Flynn, Oklahoma City, Britton, Edmond, Waterloo, and Seward, and arriving at Guthrie at 8:40 a. m.; train No. 18, leaving Purcell about 2:35 p. m.,

stopping at the stations of Noble, Norman, Oklahoma City, Edmond, Seward, and arriving at Guthrie at about 4:50 p. m.; train No. 420, leaving Purcell about 1:20 p. m.; stopping at the stations of Walker, Noble, Norman, Moore, Flynn, Oklahoma City, Britton, Edmond, Waterloo, Seward, and arriving at Guthrie about 6:30 p. m. It further alleged that during the year 1908 it had in operation additional passenger service through the territory above named, passing the stations above named, and that said passenger traffic was not profitable and remunerative, and the business at such stations, during the entire period during the first seven months of 1908, constantly decreased, so that this defendant, through its officers and managers, exercising its sound judgment in the operation of its property, discontinued the same; that the passenger service accorded within the state of Oklahoma along the line of Atchison, Topeka & Santa Fe Railway covered by the petition of the plaintiffs herein is equal to the service furnished at any other point along said defendant's entire line of 6,000 miles of railway, where conditions are similar, or practically the same, as they are in the state of Oklahoma.

The answer of the Gulf, Colorado & Santa Fe Railway Company was to the effect that it has and maintains adequate train service on its line of railway in the state of Oklahoma, and has passenger service between the Red river and the city of Purcell, as follows: Train No. 5, leaving Purcell for the south at 2:30 a. m., arriving at the Red river about 6:15 a. m., stopping at the stations of Purcell, Wayne, Paoli, Pauls Valley, Wynnewood, Davis, Dougherty, Berwyn, Ardmore, Marietta, and Thackerville; train No. 17, leaving Purcell at 1:45 p. m., and arriving at the Red river at 5:30 p. m., stopping at the stations of Purcell, Wayne, Paoli, Pauls Valley, Wynnewood, Davis, Dougherty, Berwyn,, Ardmore, Overbrook, Marietta, Bomar, Thackerville, and Red; train No. 6, leaving the Red river at 11:03 p. m., arriving at Purcell at 3 a. m., stopping at the stations of Thackerville, Marietta, Ardmore, Berwyn, Dougherty, Davis, Wynnewood, Pauls Valley, Paoli, Wayne, and Purcell; train No. 18, leaving the Red river at

10:28 a. m., arriving at Purcell at 2:15 p. m., stopping at the stations of Thackerville, Bomar, Marietta, Overbrook, Ardmore, Berwyn, Dougherty,, Davis, Wynnewood, Pauls Valley, Paoli Wayne, and Purcell. That in so furnishing such passenger trains as above it is furnishing an adequate and sufficient and proper service over its line of railway in the state of Oklahoma, covered by the petition of plaintiffs herein, and should not be required to maintain and operate other or additional trains. That there are no large cities, or special reasons, why said communities should be served with other additional passenger train service than as above outlined. That during a large portion of the year 1908, last past, this defendant had in operation extra passenger service through the territory above named, passing the stations above named. That said passenger service was not profitable and remunerative, and the business at said stations during the entire period constantly decreased, so that the defendant, through its officers and managers, exercising its sound judgment in the operation of its property, discontinued the same. That during the first six months of the year 1908, for which this defendant has available statistics, all the stations above named have shown a decrease in business in passenger earnings as compared with the same period for the year 1907. That this defendant has a line of railway practically 1,500 miles in extent within the state of Texas, Louisiana, and Oklahoma; and that the passenger service accorded within the state of Oklahoma along the line covered by the petitions herein is equal to the service furnished at any other point along said defendant's entire line of railway, where conditions are similar or practically the same as they are in the state of Oklahoma.

The proceedings were all consolidated by mutual consent, and after a hearing the commission entered the following findings and order:

"Complaints in the form of petitions were filed on July 17, 1908, by the citizens of the towns of Ardmore, Berwyn, Davis, Wynnewood, Pauls Valley, Paoli, Wayne, and Edmond, alleging inadequate passenger train service on the lines of road operated by the defendants between Marietta and Guthrie. That the de-

fendants were duly notified as required by law, and the case was set for hearing on the 17th day of August, 1908. Whereupon the defendants, appearing by their counsel and officials, filed their separate answers, denying the necessity for additional passenger train service, and alleging that the passenger trains now operated over their lines of railroad were ample and sufficient for the reasonable needs of the traveling public. On the 17th day of August, the case coming on to be heard, many witnesses were introduced and examined on behalf of the complainants and the defendants, which evidence developed a contention on the part of the citizens of Ardmore as to the schedule of the train which should be installed, and some evidence touching upon the time of installation thereof. After a hearing, and the taking of evidence for a period of approximately two days, and after due consideration of the same, the commission finds that the trains operated by the defendants from Purcell to Marietta consists of one night passenger train each way, and one day passenger train each way, and that said trains now consist of from 8 to 12 coaches, and are heavy for the equipment used, and that said trains have much difficulty in making their schedule time, which is not made one-half the time.

"The commission further finds from the evidence that the trains are very badly crowded with passengers. Most of the witnesses upon the stand testified that upon most trains on which they had had occasion to ride passengers were compelled to stand without seats during some portion of the trip. The defendants admitted that they operated three passenger trains daily over this line of road for a period of 18 months prior to January, 1908, and that the same was a necessity at that time, and it is further shown by the evidence that the population in the territory through which these roads operate has increased, and is still increasing, and that there is now as great, if not greater, travel in what was formerly Indian Territory than at any time in recent years, owing to the fact of the removal of restrictions and immigration into that part of the state for the purpose of buying land. The commission is clearly of the opinion that the passenger train facilities and service on this part of the defendant's railroad is wholly inadequate, and that the reasonable necessities of the people demand additional service at the earliest practicable time at which such service could be installed.

"The next proposition, which the commission has given due consideration, is the schedule upon which such trains should be

operated to serve the greatest number of people, with the greatest convenience. This question has been the most difficult one for the commission to arrive at its conclusion. However, upon due consideration of the evidence of the witnesses who testified, and Guthrie being the capital of the state, it is apparent to the commission that the traveling public's necessities would be best subserved by the operation of an early passenger train from Marietta to the capital, and other points along the line, such as Norman, Oklahoma City, Ardmore, and Pauls Valley. That the people of these towns, by the operation of such a passenger train, could spend all day, or a part of the day, at points north, and return the same day. It appears to the commission this would be a great convenience to the country merchants who buy goods at Oklahoma City, and to parents who have children attending the University at Norman. They could visit that institution all day, and return the same day, and the further fact that there are many people who have business at the capital of the state which could be transacted in half a day, and the various boards and Legislature meetings at Guthrie, is an additional reason why an early morning train should be operated north, and an afternoon train south.

"With the above facts before the commission it is of the opinion that a train should be operated by the defendants leaving Guthrie at 5 o'clock p. m., arriving at Marietta at about 11:20 o'clock p. m., and leaving Marietta the following morning at 5:30 a. m., and arriving at Guthrie at 11:25 a. m. Therefore it is ordered by the Corporation Commission of the state of Oklahoma that the Gulf, Colorado & Santa Fe Railway Company and the Atchison, Topeka & Santa Fe Railway Company install and operate a passenger train daily from the city of Guthrie to Marietta, Okla.; said train to leave Guthrie at 5 p. m., arriving at Marietta at about 11:20 p. m., leaving Marietta at 5:30 a. m., arriving at Guthrie 11:25 a. m. That the time and arrival of said trains at intermediate and other stations on its lines, not mentioned, herein, shall be fixed and established by the defendants. That this order shall go into effect and be complied with by the defendants on and after the 6th day of September, 1908, and shall be operated continuously until otherwise ordered by the commission."

While counsel for the defendants have assigned a great many grounds upon which they claim the order of the corporation commission should be reversed, the principal ground, and the one

Vol. 23—34

chiefly relied upon in their brief, is that the evidence introduced on the trial of this case is wholly insufficient to show any real necessity for any additional train service over its lines in Oklahoma, and particularly that part between Guthrie and Purcell, and that for that reason the order of the commission was unreasonable and unjust. We believe this contention is well taken. To our mind the findings of fact of the commission are not sufficient to support that part of its order requiring additional train service between Guthrie and Purcell. They find that between Purcell and Marietta the passenger trains consist of from 8 to 12 coaches each, and are too heavy for the equipment used, and that said trains have much difficulty in making their schedule time, which is not made one-half the time: that the train facilities and service on this part of the defendant's railroad is wholly inadequate, and that the reasonable necessity of the people demands additional service at the earliest practicable time at which service could be installed. This part of the commission's findings is amply sustained by the evidence; and, if the order requiring additional train service was confined to the part of defendant's lines between Purcell and Marietta, it would not be disturbed by this court. There is, however, no evidence, and no finding of the commission, tending to show that the train service is not adequate between Guthrie and Purcell. The evidence on that point is to the effect that the Atchison, Topeka & Santa Fe Railway Comanpy operate three first-class passenger trains each way daily between Guthrie and Purcell on convenient schedules; that there is also carried a passenger coach attached to the local freight trains Nos. 423 and 420, hereinbefore referred to, in order to accommodate those of its patrons who desire to make short stops at small stations. Indeed, it was conceded by the Assistant Attorney General on the trial of the cause that the service between Guthrie and Purcell was not only adequate, but that it could not be any better. The Assistant Attorney General stated during the trial that:

"I just want to say there is no contention whatever; that there is no doubt of the service between Guthrie and Purcell. As

to the people living along the road, I am willing to admit so far as your service is concerned it could not be any better under the circumstances; it is the bobbing of it off that we are after."

It appears from the evidence, from the findings of the commission, and this statement of the Assistant Attorney General that the real ground of complaint was the inadequacy of the service between Purcell and Marietta; that it was the "bobbing of it off" at Purcell that they were after. There can be little question that this was the view the Corporation Commission took of the matter, for there is no specific finding of fact to the effect that the passenger service between Guthrie and Purcell was not adequate. From the statement of the Assistant Attorney General and the findings of the commission we are at a loss to know just upon what theory the order was made requiring an additional train each way between Guthrie and Purcell, a distance of something like 70 miles. Under the present schedule train No. 115 leaves Guthrie at 7:10 p. m., reaching Purcell at 9:30 p. m. The additional train ordered by the commission would leave Guthrie at 5 p. m., running in the neighborhood of two hours ahead of the regular train between Guthrie and Purcell. Train No. 116 leaves Purcell at 6:30 a. m., arriving at Guthrie about 8:40 a. m. The additional train from the south ordered by the Corporation Commission would run about two hours behind the regular train between Purcell and Guthrie. To our mind this part of the order of the commission is unreasonable and unjust. There is no evidence nor finding made by the commission to support it, and it is in the face of the admission of the Assistant Attorney General that, as to the people living along the road between Guthrie and Purcell, the service could not be any better under the circumstances. The evidence clearly shows that there is need for additional passenger train service between Purcell and Marietta, and the Corporation Commission very properly found this to be a fact. But as this court has no authority to modify decisions of the Corporation Commission in cases such as the one at bar, and is of the opinion that that part of the order requiring additional

passenger train service between Guthrie and Purcell is unreasonable, the order of the Corporation Commission must be reversed. Dunn, Williams, and Hayes, JJ., concur; Turner, J., dissents.